UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MCKEE,

        Plaintiff,

v.

GENERAL MOTORS LLC,

        Defendant.

_____/

Case No. 2:18-cv-11303

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [23]**

On July 19, 2018, Plaintiff James McKee filed an amended putative class action complaint against Defendant General Motors, LLC ("GM"). ECF 18. Plaintiff alleged that GM "designed, manufactured, marketed, distributed, sold and warranted" models of the 2015–17 GMC Canyon and Chevrolet Colorado ("Class Vehicles") that were "equipped with defective 6L50 transmissions." *Id.* at 247. The defective transmission allegedly causes the Class Vehicles to slip, buck, kick, jerk, and harshly engage; "has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration and difficulty stopping the vehicle, and eventually suffers a catastrophic failure" ("Transmission Defect"). *Id.* at 248.

Plaintiff alleges that GM thus: (1) breached a written warranty in violation of the Magnuson-Moss Warranty Act ("MMWA"), (2) breached express or implied warranties, (3) committed common law fraud, (4) engaged in deceptive and unfair

1

trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (5) was unjustly enriched. *See generally id* at 308–19.

Plaintiff brings his claims on behalf of a nationwide or a Florida class. *Id.* at 304. The proposed class includes "all persons or entities" who are "current or former owners and/or lessees of a Class Vehicle." *Id.*[1]

GM filed a motion to dismiss on August 23, 2018. ECF 23. The Court held a motion hearing on February 26, 2019. Upon a thorough consideration of the pleadings and the arguments presented at the hearing, the Court will grant in part and deny in part Defendant's motion to dismiss.

## STANDARD OF REVIEW

When analyzing a motion to dismiss under Civil Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss, "the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005) (citation omitted). Plaintiff must allege facts "sufficient 'to raise a right to relief above the speculative level,' and

---

[1] Plaintiff does not allege that he owned, or currently owns, a GMC Canyon. *See generally* ECF 18; *see also id.* at 252 ("Plaintiff purchased a new 2015 Chevrolet Colorado.") No party addresses whether Plaintiff can represent members of a class for a vehicle he did not own, and the Court will not address the issue.

to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal citation omitted). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

I. <u>Plaintiff Lacks Standing for the Nationwide Class</u>

Plaintiff alleges fraud, unjust enrichment, breach of implied and express warranties, and MMWA claims on behalf of a nationwide class but presents factual allegations on behalf of only one named plaintiff—himself. ECF 18, PgID 304. The class-certification analysis may precede standing analysis when "the class certification issue [is] 'logically antecedent' to the standing issue." *Smith v. Lawyers Title Ins. Co.*, No. 07–12124, 2009 WL 514210, at *2 (E.D. Mich. Mar. 2, 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)). "[T]he 'logical[ly] antecedent' language should be construed in a manner that permits consideration of the standing issue . . . prior to class certification." *Smith*, 2009 WL 514210, at *3; *see also Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *1 (E.D. Mich. Jan. 4, 2019).[2]

---

[2] "The Sixth Circuit has not directly addressed" whether to bifurcate the standing inquiry in class actions, "and district courts for the Eastern District of Michigan have reached different conclusions." *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 587 (E.D. Mich. 2017).

3

Named plaintiffs "who represent a class must allege and show that they personally have been injured not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 347 (1996)); *see also Smith*, 2009 WL 514210, at *3 (deciding that because "the plaintiff has not alleged injury in any other state" the plaintiff lacked "standing to bring state law claims arising under the laws" of other states); *see also Wozniak*, 2019 WL 108845, at *1 (determining that the named plaintiffs failed to allege injury in twenty-three states and dismissing the claims for lack of standing).

Like the plaintiffs in *In re Packaged Ice*, *Smith*, and *Wozniak*, Plaintiff here does not allege injuries in states other than Florida or base his claims on the application of other states' laws. Plaintiff therefore lacks standing to bring claims on behalf of a nationwide class. The Court will now address Plaintiff's claims on behalf of the Florida class.

II. Choice of Law

A federal district court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Michigan's choice-of-law rules presume "that Michigan law applies to a case unless there is a rational reason to displace it." *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001) (citing *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274 (1997)).

4

To determine whether a rational reason exists to displace Michigan law, the Court conducts a two-step analysis. *Sutherland*, 454 Mich. at 286. First, the Court must determine whether "a foreign state has an interest in having its law applied." *Id.* Second, the Court must decide whether Michigan's interests in applying its law nevertheless mandate application of Michigan law. *Id.*

Here, neither party disputes that Florida law applies, Plaintiff purchased his vehicle in Florida, and Plaintiff represents a Florida class of vehicle owners. Florida has interests in applying its law that outweigh Michigan's interests. A rational reason therefore exists to displace Michigan law.

III. <u>Express Warranty</u>

Plaintiff alleges that GM violated its New Vehicle Warranty ("Warranty") by "selling to Plaintiff and Class members the Class Vehicles with the Transmission Defect." ECF 18, PgID 316. In relevant part, GM's Warranty "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship." ECF 23-2, PgID 433.[3] GM argues that the Transmission Defect is a "design defect" not covered by the Warranty because the Warranty covers only "defects in 'material or workmanship.'" ECF 23, PgID 403.

---

[3] Plaintiff does not include the Warranty's language in his complaint. But, because the "complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document" that document merges into the pleadings for review under Civil Rule 12(b)(6). *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998); *see* ECF 18, PgID 315–17.

5

A. *Types of Defects.*

There are two types of defects: manufacturing and design. A manufacturing defect exists "when an item is produced in a substandard condition" and the defect manifests when the item "perform[s] differently from other ostensibly identical units of the same product line." *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017) (quoting *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002)); *see also Nelson v. Nissan N. Am., Inc.*, No. 11–5712 (JEI/AMD), 2014 WL 7331075, at *2 (D.N.J. Dec. 19, 2014) (A manufacturing defect occurs "when a product comes off the assembly line in a substandard condition."). Thus, manufacturing defects can be understood as "defects in 'material or workmanship.'" ECF 23, PgID 403.

A design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Davidson*, 2017 WL 976048, at *11 (quoting *McCabe*, 100 Cal. App. at 1120). Design defects, therefore, exist in every product possessing the faulty design.

B. *Warranty's Meaning.*[4]

GM's Warranty "covers repairs to correct any vehicle defect." ECF 23-2, PgID 433. The Warranty creates exceptions, however, for (1) slight noise, (2) vibrations, or (3) "other normal characteristics of the vehicle related to materials or workmanship."

---

[4] Florida law enforces "contracts according to their plain terms when those terms are unambiguous." *S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*, 702 F. App'x 874, 878 (11th Cir. 2017). A court applying Florida law "must construe a contract in a manner that accords with reason and probability and avoid[s] an absurd construction." *Id.* (quotation omitted).

6

*Id.* In relevant part, then, the Warranty covers "any vehicle defect" except for "normal characteristics of the vehicle related to" manufacturing defects.

GM argues that the Warranty provides only for the repair of "any vehicle defect . . . due to materials or workmanship occurring during the warranty period." ECF 30, PgID 537. GM also criticizes Plaintiff for his "contorted reading of the warranty language." *Id.* Plaintiff's "contorted reading," however, merely recites the express language of GM's inartfully-drafted Warranty. *Compare* ECF 26, PgID 495 (Plaintiff's opposition brief) *with* ECF 23-2, PgID 433 (Warranty).

GM maintains that the Warranty would cover only vehicle defects related to materials or workmanship—i.e. only manufacturing defects—but that is not what the Warranty *says*. And GM's arguments to the contrary are unpersuasive.

1. The Warranty's plain language.

First, GM's argument is inconsistent with the Warranty's plain language. GM argues that the Warranty covers only "defects in 'material or workmanship.'" *See, e.g.,* ECF 23, PgID 403; ECF 30, PgID 537 ("The warranty provides for the repair of 'any vehicle defect . . . due to materials or workmanship occurring during the warranty period.'").[5] GM further represents that the warranty excludes "slight noise, vibrations, or other normal characteristics of the vehicle." ECF 30, PgID 537.

But in its entirety, the relevant Warranty language states that it "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal

---

[5] GM's citation in its reply brief does not cite the express language of the Warranty, *see* ECF 23-2, PgID 433 (using "related to" rather than "due to").

7

characteristics of the vehicle related to materials or workmanship." ECF 23-2, PgID 433. GM's preferred reading inserts a comma into the Warranty. But the Warranty does not contain GM's proffered comma.[6] Rather, the Warranty's plain language demonstrates that the phrase "related to materials or workmanship" modifies "normal characteristics of the vehicle" and *not* "any vehicle defect." The Warranty therefore covers "any vehicle defect" except for slight noise, vibrations, or manufacturing defects related to "normal characteristics of the vehicle."

GM maintains that the Court's interpretation creates an absurdity because the Warranty's next sentence provides that "[n]eeded repairs will be performed using new, remanufactured, or refurbished parts" and replacement parts could not remedy a design defect. ECF 23-2, PgID 433. But the Warranty's language covers *both* design defects and abnormal "characteristics of the vehicle related to materials or workmanship." *Id.*[7] Replacement parts would satisfactorily remedy abnormal characteristics of the vehicle. Moreover, new parts (e.g. a newly-designed transmission) could replace parts with design defects. Thus, no absurdity results from the Court's construction of the Warranty's plain language.

---

[6] For example, GM's interpretation would read: "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle**[,]** related to materials or workmanship." Or even, "covers repairs to correct any vehicle defect**[—]**not slight noise, vibrations, or other normal characteristics of the vehicle**[—]**related to materials or workmanship."

[7] Because the Warranty creates an exception for "normal characteristics," the Warranty's presumptive coverage includes "abnormal characteristics" related to materials or workmanship.

8

GM also argues that the plain language of its Warranty, as adopted by the Court, does not cover "what a reasonable consumer would expect a new vehicle warranty to cover." ECF 30, PgID 537. That may be so. But under Florida contract-interpretation principles, the argument does not affect the Court's construction of the Warranty's plain language—though it may point to a potential public relations concern for GM.

2. The cases relied on by GM are unpersuasive.

GM points to several non-binding district court decisions that have adopted GM's argument. It then asks the Court to adopt a misconstruction of the Warranty based on the other courts' precedent.

First, in *Sloan v. General Motors*, No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017), the Northern District of California determined that the Warranty excludes design defects from its coverage. *Id.* at *8. It stated "[s]everal courts applying California law" had reached "a similar result," and adopted GM's argument. But, notably, the *Sloan* court's analysis eliminated the complicating language from GM's warranty. *See id.* ("[T]he GM warranty covers 'repairs to correct any vehicle defect . . . *related to materials or workmanship* occurring during the warranty period."). As explained above, the *Sloan* court's interpretation ignores the Warranty's plain language.

*Sloan* supported its construction by adopting GM's argument "that the overwhelming weight of state law authority holds that design defects are *not* covered under similar warranties." *Id.* But the cases that *Sloan* relied on addressed

9

warranties that expressly limited their scope to manufacturing defects. *See id.* at n.5.[8] GM's Warranty is not similar to the warranties in the five cases relied on by *Sloan*.

Second, GM references *In re Motors Liquidation Co.*, but the court in that case construed the plain terms of a different warranty—"the Glove Box Warranty." No. 09–50026 (REG), 2013 WL 620281, at \*6 (Bankr. S.D.N.Y. Feb. 19, 2013). The Glove Box Warranty covers "any vehicle defect related to materials or workmanship occurring during the warranty period." *Id.* at \*3; *cf.* ECF 23-2, PgID 433. The case is unpersuasive.

Third, GM cites *Acedo v. DMAX, Ltd.* in support of its construction. But the court in *Acedo* did not consider an express warranty. Rather, it considered whether GM's "alleged affirmative representations" about various truck features "created an express warranty." *Acedo v. DMAX, Ltd.*, 2015 WL 12696176, at \*23 (C.D. Cal. Nov. 13, 2015). That case is distinguishable from Plaintiff's because here Plaintiff relies on a written warranty.

---

[8] For ease of reference, the Court will include the five cases here. *See Coba v. Ford Motor Co.*, No. 12-1622 (KM) (MAH) 2016 WL 5746361, at \*1 (D.N.J. Sept. 30, 2016) (Ford "will repair, replace, or adjust all parts on your vehicle that are defective in factory-supplied materials or workmanship."); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 520 (7th Cir. 2003) (Porsche's New Vehicle Limited Warranty required Porsche to "repair or replace . . . any factory-installed part that [was] defective in material or workmanship under normal use."); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013) (describing the Warranty as covering "defects in materials or workmanship"); *Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at \*12 (D.N.J. Sept. 11, 2015) ("Kia warrants that your new Kia Vehicle is free from defects in materials or workmanship."); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 613 (E.D. Mich. 2017) (noting that plaintiffs conceded that Whirlpool's "repair and replace obligations" were limited "to defects in 'materials or workmanship.'").

Fourth, GM relies on a decision from litigation in Missouri about its anti-lock brake products. The Missouri case considered whether GM warranted that "the vehicles [would be] free of defects." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1532 (E.D. Mo. 1997). To the extent *Anti-Lock Brake* addressed warranties that provided coverage for defects only in material or workmanship, GM has not shown that the "GM warranties for the 1990, 1993 and 1994 Chevy light trucks" contained the same language as the Warranty.

Based on the plain language of the Warranty, and in light of the limited persuasiveness of the cases relied on by GM, the Court will not accept its construction of the Warranty. The Warranty therefore covers, in relevant part, *any* vehicle defect *except for* "normal characteristics of the vehicle related to materials or workmanship." ECF 23-2, PgID 433.

*C. Whether the Warranty Covers the Transmission Defect.*

Having defined the scope of the Warranty's coverage, the Court must now consider whether Plaintiff pleaded a covered defect. GM's argument primarily relies on its position that the Warranty covers only manufacturing defects. *See* ECF 23, PgID 403–06. Consistent with its interpretation of the Warranty, GM argues that Plaintiff pleads only a "design defect." But the Warranty covers both manufacturing defects that are abnormal characteristics of the vehicle and design defects.

Plaintiff alleges that the Transmission Defect is both a "concealed manufacturing and design defect." ECF 18, PgID 249–50. Plaintiff further claims that the Transmission Defect "results from a poor design and/or failures in the

11

manufacturing process." *Id.* at 258. Plaintiff also argues that the "Transmission Defect is inherent in each of the Class Vehicles." *Id.* at 250. And the Class Vehicles include *all* 2015–17 GMC Canyon and Chevrolet Colorados. Taken together, Plaintiff pleads that the Transmission Defect is a design defect.

Even if Plaintiff did not plead a design defect, he pleaded an abnormal characteristic of the vehicle related to materials or workmanship. To find otherwise would require GM to adopt the argument that it intended for the 6L50 transmission to slip, buck, kick, jerk, and harshly engage; to prematurely wear internally; to suddenly accelerate, delay in downshifts, delay acceleration; or to stop with difficulty. *See id.* at 248 (describing the effects of the defect); *see also supra* Part III.A (manufacturing defects occur when a product performs differently than intended).

Under either interpretation, Plaintiff states a claim for breach of an express warranty.

IV.   Implied Warranty

Plaintiff alleges that GM breached an implied warranty. "[U]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1232 (S.D. Fla. 2014) (quoting *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005)).[9]

---

[9] Plaintiff relies on *Sanchez-Knutson* to show that when consumers are the intended "ultimate consumers," a third-party beneficiary theory can defeat privity. ECF 26, PgID 497 (citing 52 F. Supp. 3d at 1234). Here, Plaintiff did not allege facts supporting a third-party beneficiary theory.

12

Plaintiff alleges that "GM sells vehicles through a network of authorized dealerships that are the agents of GM, and under extensive control of GM." ECF 18, PgID 257. Particularly, Plaintiff alleges that he purchased his Chevrolet Colorado "from Autonation Chevrolet Fort Lauderdale ("Autonation"), an authorized GM dealer in Ft. Lauderdale, FL." *Id.* at 252.

First, Plaintiff fails to allege facts supporting his assertion that the dealership from which he purchased his Chevrolet Colorado was an agent of GM and under its control. The conclusory allegation is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555).

Second, Plaintiff's allegations fail to demonstrate privity of contract between him and GM. *See, e.g., Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV-MORENO, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) ("Ford is an automotive distributor, not a dealer. . . . Plaintiffs lack privity with Ford and the implied warranty claim must fail); *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006) (affirming a dismissal when plaintiff purchased a motor home from a dealer and not from the manufacturer). Plaintiff's implied warranty claim therefore fails.

V.   <u>Magnuson-Mass Warranty Act</u>

Plaintiff asserts a claim for breach of an express warranty under the federal Magnuson-Moss Warranty Act. The MMWA lacks substantive requirements but provides a federal remedy for breach of warranties under state law. Thus, "the applicability of the [MMWA] is directly dependent [sic] upon a sustainable claim for

13

breach of warranty." *Wozniak*, 2019 WL 108845, at * 3 (quoting *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005)).

Because Plaintiff's breach-of-express-warranty claim survives GM's motion to dismiss, his MMWA claim survives as well.

VI.     Common Law Fraud

Plaintiff has not alleged facts sufficient to plead his common-law fraud claim. Fraud claims must meet the heightened pleading standard of Civil Rule 9(b).[10] *See Miller v. Gen. Motors, LLC*, No. 17-cv-14032, 2018 WL 2740240, at *14 (E.D. Mich. June 7, 2018) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)). For affirmative misrepresentations, Civil Rule 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at *11 (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012)).

For claims involving fraudulent omissions, however, Civil Rule 9(b) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission." *Id.* (quoting *Republic Bank & Tr. Co. v. Bear Stearns Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). Specifically, a plaintiff pleading a fraudulent omission must allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the

---

[10] The parties dispute whether the economic loss doctrine bars Plaintiff's fraud claim. *See* ECF 23, PgID 408; ECF 26, PgID 497–99. Because Plaintiff failed to adequately plead GM's knowledge of the defect as required by Civil Rule 9(b), the Court will not reach the question.

14

content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 256). A complaint may suffice if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751–52 (E.D. Mich. 2017).

Here, Plaintiff presents an omissions-based theory of fraud. *See* ECF 18, PgID 248; *see also* ECF 26, PgID 500 ("Plaintiff's fraud claim is grounded in allegations of GM's omissions and concealments . . . rather than affirmative misstatements.").

Plaintiff identifies GM's "knowledge of the defect" as the "what" of his fraud claim. *See* ECF 26, PgID 501. Plaintiff also argues that GM knew of the defect before the sale of the Class Vehicles and that the various channels through which GM sold the vehicles failed to disclose the defect. *Id.* at 501–02. But the argument is unpersuasive.

Plaintiff points to several sources of GM's alleged knowledge. First, Plaintiff alleged that GM used the same 6L50 transmission in the Cadillac CTS and that numerous consumers complained to the NHTSA about the CTS's transmission beginning in 2008. ECF 18, PgID 249, 261–64 (listing six complaints), and 298–301

15

(listing same six complaints).¹¹ Second, Plaintiff alleged that consumers sent the NHTSA complaints about the Chevrolet Colorado and GMC Canyon¹² between September 2015 and November 2017. *See id.* at 264–95 (listing fifty-seven complaints). Third, Plaintiff presents consumer complaints from "various online forums." *Id.* at 295–98 (listing representative complaints). Fourth, Plaintiff argues that GM's "pre- and post-release testing" of the transmissions would have provided a basis for GM to know of the defect. *Id.* at 301. Finally, Plaintiff relies on other means by which GM monitors vehicle performance—such as GM's "internal records . . . of replacement parts, including transmissions, likely ordered from GM by authorized GM dealerships," GM's communications "with its authorized service technicians," and GM's review of "warranty data submitted by its dealerships and authorized technicians." *Id.* at 302–03.

Plaintiff's allegations fail to sufficiently plead GM's knowledge. Courts routinely reject generalized allegations about "testing" and manufacturer "analyses" made in support of finding knowledge of a defect. *See Beck*, 273 F. Supp. 3d at 753 (collecting cases). And Plaintiff's allegations of consumer complaints online or to the NHTSA are insufficient to support a finding of GM's knowledge. *See id.*¹³ Moreover,

---

¹¹ Plaintiff's response to GM's motion to dismiss relied primarily on the Cadillac CTS complaints. *See* ECF 26, PgID 503–04.

¹² As noted above, Plaintiff does not allege that he owns a GMC Canyon. *See* ECF 18, PgID 252 (alleging Plaintiff purchased a Chevrolet Colorado on March 14, 2015).

¹³ Although *Beck* makes the cited assertion only in the context of analyzing whether the plaintiff sufficiently pleaded superior or exclusive knowledge for a specific state-law claim, the conclusion that complaints

16

most of Plaintiff's consumer complaints *post-date* his purchase of the vehicle. *See* ECF 23, PgID 412–14 (noting the various complaints that were made *after* Plaintiff purchased his Chevrolet Colorado). Finally, Plaintiff's allegations based on GM's internal records, communications with its dealerships or service technicians, and review of its warranty data are conclusory and insufficient because they do not plausibly allege that GM "knew of the defect *prior* to the time it distributed" the Class Vehicles. *See Herremans v. BMW of N. Am., LLC*, No. CV 14–02363 MMM (PJWx), 2014 WL 5017843, at *17 (C.D. Cal. Oct. 3, 2014) (citation omitted) (emphasis added).

Plaintiff did not properly plead the "what" of the alleged omission, namely, GM's knowledge of the Transmission Defect. Plaintiff thus failed to satisfy Civil Rule 9(b)'s heightened pleading standard and his common-law fraud claim fails.

VII. Florida Deceptive and Unfair Trade Practices Act

FDUTPA requires a plaintiff "to plead with particularity facts sufficient to show" a defendant's knowledge of the defect. *Varner v. Domestic Corp.*, No. 16-22482-Civ-Scola, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (applying Civil Rule 9(b)'s heightened pleading standard to state deceptive trade practices acts) (citing *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002)); *see also State Farm*

---

to the NHTSA are insufficient to 'allege that [the manufacturer] had knowledge—let alone exclusive knowledge' is applicable to the Court's analysis of whether Plaintiff[] adequately pleaded the 'what' of [GM's] knowledge here. Moreover, the *Beck* plaintiff alleged that the Defendant 'regularly monitor[ed] NHTSA complaints in order to meet its reporting requirements[.]' 273 F. Supp. 3d at 753. Even that allegation was insufficient to prove Defendant's knowledge of the defect.

*Wozniak*, 2019 WL 108845, at *3 n.4.

17

*Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) (noting that district courts "split as to whether FDUTPA claims are subject to Rule 9(b)," but when "the gravamen of the claim sounds in fraud . . . the heightened pleading standard of Rule 9(b) applies") (citations omitted). As discussed *infra*, Part V, Plaintiff did not sufficiently plead GM's knowledge of the defect and falls short of Rule 9(b)'s pleading standard. Plaintiff's FDUTPA claim fails.

VIII. <u>Unjust Enrichment</u>

Under Florida law, "the existence of an express contract between the parties concerning the same subject matter" precludes a claim for unjust enrichment. *See Dye v. United Servs. Auto. Ass'n*, 89 F. Supp. 3d 1332, 1337 n.4 (S.D. Fla. 2015) (citation omitted). Because the Warranty governs Plaintiff's claims against GM for the Transmission Defect, a claim for unjust enrichment is unavailable to him.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss [23] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's implied warranty, fraud, Florida Deceptive and Unfair Trade Practices Act, and unjust enrichment claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims on behalf of a nationwide class are **DISMISSED** for lack of standing.

**IT IS FURTHER ORDERED** that Plaintiff's claims for breach of express warranty and violations of the Magnuson-Moss Warranty Act on behalf of himself and a Florida class remain.

**IT IS FURTHER ORDERED** that Defendant shall **FILE** an answer to the remaining portions of Plaintiff's amended complaint no later than **April 15, 2019**.

**SO ORDERED**.

                                            s/ Stephen J. Murphy, III
                                            STEPHEN J. MURPHY, III
                                            United States District Judge

Dated: March 25, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 25, 2019, by electronic and/or ordinary mail.

                                            s/ David P. Parker
                                            Case Manager